**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION**

WILLIE GAMMON

vs.                                      No.  2:04CV00205 SWW

DAN FLOWERS, ET AL

**ORDER**

Plaintiff Willie Gammon ("Gammon") brings this employment discrimination action under Title VII of the 1964 Civil Rights Act, as amended by the Civil Rights Act of 1991; 42 U.S.C. § 1983; and 42 U.S.C. § 1981 against Dan Flowers, Director of the Arkansas Highway Transportation Department ("AHTD"), and Ronnie Burks, Chief of the Arkansas State Highway Police ("AHP").  Gammon sues Defendants in their official and individual capacities, seeking compensatory and punitive damages and injunctive and declaratory relief.

Before the Court is Defendants' motion for summary judgment (docket entries #41, #42) and Gammon's response (docket entries #64, 65).  After careful consideration, and for the reasons that follow, the Court concludes that Defendants' motion should be granted.

**I.**

Gammon began working for the AHP in 1984 as a patrolman.  In 1996, the AHP promoted Gammon to sergeant, and he presently holds that position.  In his first amended complaint (docket entry #9) Gammon summarizes his claims against Defendants as follows:

> [T]he substance of the plaintiff's suit contends that he has been systematically denied promotional opportunities, systematically denied transfer opportunities; systematically denied specific training and educational upgrade opportunities; systematically denied monetary bonus/merit pay available to white officers, systematically subject to a hostile working environment, suffered injuries to his constitutional rights at the hands of the defendants' collective racially offensive

>    retaliatory actions . . . , degradation in his job by being subject to supervision of white officers of inferior rank to him; treated in an inferior way as it relate[s] to the simple assignment of a patrol unit because of his race, lastly, subjected to offensive outburst by white fellow officers and white supervisors, inclusive of a white officer use of racial epithets without recourse, except to violence.

Docket entry #9, ¶15.

## II.

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). As a prerequisite to summary judgment, a moving party must demonstrate "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has properly supported its motion for summary judgment, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). When considering a motion for summary judgment, a court must construe all evidence in favor of the non-moving party. *Id.* (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986)). However, the non-moving party may not rest on mere allegations or denials of his pleading but must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 587 (quoting Fed. R. Civ. P. 56(e)).

## III.

In support of their motion for summary judgment, Defendants assert that Gammon's claims against the ASHTD and the AHP are barred under the Eleventh Amendment, and, with regard to Gammon's other claims, there are no genuine issues for trial.

**Eleventh Amendment**

Gammon's claims against Defendants Flowers and Burks in their official capacities are, in effect, claims against the AHTD and the AHP. Claims against these state agencies are equivalent to claims against the State of Arkansas.[1] Absent state consent or congressional abrogation, "a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." *Pennhurst State Sch. & Hosp. V. Halderman*, 465 U.S. 89, 100 (1984); *Williams v. Missouri*, 973 F.2d 599, 599-600 (8th Cir. 1992).

Congress did not abrogate Eleventh Amendment immunity when enacting § 1983.[2] *See Burk v. Beene,* 948 F.2d 489, 493 (8th Cir. 1991) (quoting *Quern v. Jordan*, 440 U.S. 332 (1979)). Because § 1983 provides the legal mechanism through which Gammon sues the State for allegedly depriving him of rights secured by the Fourteenth Amendment and his rights under 42 U.S.C. § 1981,[3] the Court must dismiss these claims. However, the Eleventh Amendment does not prohibit Gammon's § 1983 claims against Flowers and Burks in their individual capacities, or his discrimination and retaliation claims under Title VII against his employer–the

---

[1] The Arkansas Highway Commission is a state agency created by the Arkansas Constitution and charged solely with the administrative control of the Arkansas Highway and Transportation Department. *See* Ark. Const. Amend. 42 § 1 (Michie 1987) (creation and powers); Ark. Code Ann. § 27-65-102 (Michie 1994) (control of highway department); Ark. Code Ann. § 27-65-107 (Michie 1994) (powers and duties).

[2] The Court notes that Congress did abrogate Eleventh Amendment immunity when enacting Title VII. *See Fitzpatrick v. Bitzer*, 427 U.S. 445 (1976).

[3] Title 42 U.S.C. § 1983 provides a remedy when a person acting under color of state law deprives an individual of a right secured by the Constitution or laws of the United States. *See* 42 U.S.C. § 1983. "A federal action to enforce rights under § 1981 against a state actor may only be brought pursuant to § 1983." *Artis v. Francis Howell North Band Booster Ass'n*, 161 F.3d 1178, 1181 (8th Cir. 1998) (citing *Jett v. Dallas Indep. Sch. Dist*. 491 U.S. 701, 735 (1989)).

State of Arkansas.

### **Discrimination - Disparate Treatment**

Gammon claims that Defendants denied him promotions, transfers, training, and equal pay based on is race. To establish discrimination based on disparate treatment,[4] Gammon shoulders the burden to show, with circumstantial or direct evidence, that the complained-of conduct was motivated by race discrimination. Because Gammon presents no evidence that directly points to the presence of a discriminatory motive, the Court will analyze his discrimination claims under the three-part framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1972).[5]

Under the *McDonnell Douglas* framework, Gammon must establish a prima facie case of discrimination by showing that (1) he is a member of a protected class; (2) he met the legitimate

---

[4] In his brief in opposition to summary judgment, Gammon suggests that the Court should analyze his claims using a disparate impact analysis. To establish a prima facie case of disparate impact, Gammon must show: (1) an identifiable, facially neutral personnel policy or practice; (2) a disparate effect on black AHP employees; and (3) a causal connection between the two. *See Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 994 (1988). With regard to the third element, Gammon must offer "statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion . . . because of . . . membership in a protected group." *Id*.

The Court finds that Gammon cannot establish a prima facie case of disparate impact. Gammon fails to identify a facially neutral employment practice or policy that he claims has a disparate effect on black employees. In fact, he charges that the AHP operates under "policies of overt racial discrimination." Docket entry #9, ¶ 59. Further, Gammon offers no statistical evidence showing that AHP personnel policies or practices have an adverse effect on black employees.

[5] The *McDonnell Douglas* burden-shifting analysis is applicable to each of Gammon's discrimination claims, which he brings under Title VII, 42 U.S.C. § 1983, and 42 U.S.C. § 1981. *See Lockridge v. Board of Trustees of University of Arkansas,* 315 F.3d 1005, 1013 (8th Cir. 2003).

expectations of his employer; (3) he suffered adverse employment action; and (4) similarly situated employees that were not members of his protected class were treated differently. *See Philip v. Ford Motor Co.*, 413 F.3d 766, 768 (8th Cir. 2005).

Under the fourth element, "[Gammon] bears the burden to proffer 'specific, tangible evidence' that employees who were 'similarly situated in all respects' to him received different treatment from [the AHP]. *Id*. (quoting *Rose-Maston v. NME Hosp., Inc.,* 133 F.3d 1104, 1109 n. 4 (8th Cir.1998) (first quote); *Gilmore v. AT&T*, 319 F.3d 1042, t 1046 (second quote)). Defendants assert that, with respect to each of Gammon's disparate treatment claims, he is unable to meet this burden.[6]

*Promotions*

In his complaint, Gammon alleges that on July 3, 2003 he was rejected for a promotion to first lieutenant; and on December 3, 2003, he was rejected for a promotion to second lieutenant. Gammon claims that Defendants selected white applicants who had less education and experience than he[7], but he provides no specific evidence regarding the qualifications for the positions he sought, or evidence showing that successful white applicants were similarly situated to him in all relevant respects. In fact, Gammon acknowledges that he scored lower on

---

[6]If Gammon establishes a prima facie case, the burden of production shifts to Defendants, who must rebut the presumption of discrimination with evidence that Gammon was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253-54 (1981). *Id*. at 254. If Defendants meet this burden of production, Gammon may prevail by pointing to evidence which, if believed, would expose the Defendants' proffered reasons as a mere pretext for intentional discrimination. *Id*.

[7]*See* docket entry #9, ¶ 32

standardized tests[8] than the successful applicants.  *See* docket entry #41, Ex. C, at 54-57.  The Court finds that Gammon has failed to present facts adequate to permit an inference of racial discrimination regarding his claim that the AHP failed to promote him based on is race.[9]

*Transfers*

In his first amended complaint, Gammon claims that the AHP systematically denied him transfer opportunities.  Gammon provides no additional information regarding this claim.  The Court finds that Gammon's allegation regarding denial of transfer opportunities fails to create genuine issues for trial.

*Training*

Gammon alleges that "specific educational specialties or training seminars" are available to white AHP officers, but no black officer has had the opportunity "of an instructor position in these training seminars."  Docket entry #9, ¶46.  Gammon also alleges that opportunities to participate in training seminars are "basically closed" to black officers because "there is no standardized method of communicating that said training is available," and black officers receive

---

[8]Gammon alleges that AHP uses standardized test for "partial evaluation" of candidates for promotions.  On the other hand, he alleges that the agency has no objective standards for making hiring decisions, and makes such decisions based on political patronage, nepotism, and cronyism.  *See* docket entry #9, ¶¶30, 49.

[9]Gammon argues that the "undisputed testimony" of other black AHP officers support his claims, and he makes general references to the deposition testimony of AHP officers Joe Black, Eric V. Rhinehouse, and Darren Smith.  *See* docket entry #65.  The Court has reviewed the portions of depositions cited in Gammon's brief and finds no testimony indicating that Gammon was treated differently from similarly-situated officers with respect to promotions, training, transfers, or pay.

Gammon also argues that the AHP operates under a "system pervaded by impermissible intentional discrimination."  *Id*. at 7.  While evidence of system-wide discrimination may be probative of discrimination and pretext, standing alone, it does not establish that Gammon, as an individual, was treated differently than similarly-situated officers.

information about training opportunities in a "haphazard fashion." *See* docket entry #9, ¶¶ 45-49.  Other than the foregoing allegations, Gammon provides no evidence to support his claim that Defendants "systematically denied him training opportunities" based on his race.  The Court finds no genuine issues for trial with regard to this claim.

*Pay*

In his brief in opposition to summary judgment, Gammon states that he "has been denied an opportunity to receive elevation in wages because of the denial of specialty training; and the denial of access to a patrol unit [i.e., a patrol car] during the periods of time covered by [the] complaint."[10]   However, Gammon fails to present any evidence that white officers who were similarly situated to him received favorable treatment by way of patrol cars, training, or higher wages.   Accordingly, Gammon has failed to present genuine issues for trail with respect to his disparate pay claim.

**Hostile Work Environment**

An employer creates an actionable hostile work environment if "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe and pervasive to alter the conditions of the victim's employment and create an abusive working

---

[10]On the subject of patrol cars, Gammon states: "With the assignment of a [patrol car] came increase pay, that was standard, along with the supplemental pay increase which amounts to thousands of dollars, in accordance with the testimony of Darren Smith and Eric Rinehouse per year, because the patrol persons did not have to drive their own vehicles to and fro from work. *See* Exhibit A (pg 8-24)"  Docket entry #65, at 2.  The Court finds no information contained on pages 8 though 24 of Exhibit A to Gammon's brief regarding the assignment of patrol cars and wages.  Additionally, contrary to Gammon's allegation that he has been denied a patrol car, he testified in his June 29, 2005 deposition that he had a patrol car for approximately 5 ½ years when he worked as a patrolman, before his promotion to sergeant.  Docket entry #41, Ex. C at 9.

environment." *Harris v. Forklift Systems, Inc*., 510 U.S. 17, 21 (1993).  To be actionable, an allegedly hostile work environment must be both objectively and subjectively offensive--one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so.  *See Faragher v. City of Boca Raton*, 524 U.S. 775, 787, 118 S.Ct. 2275, 2283 (1998)(setting forth standards to evaluate claims of hostile work environment based upon sexual harassment); *see also Gipson v. KAS Snacktime Co*., 171 F.3d 574, 578 (8th Cir. 1999) ("The same standards are generally used to evaluate claims of hostile work environment based upon sexual harassment and racial harassment.").

In support of his hostile work environment claim, Gammon alleges that "racial epithets have been used frequently referring to African American employees generally and specifically in early January 2002 Lieutenant James Moore openly uttered the racial epithet "nigger" to Patrolman First Class Darren Smith and to all other African Americans in general that worked within the ASHTD and AHP."  Docket entry #9, ¶39.  Gammon presents no additional allegations or evidence in support of his hostile environment claim.  Accepting Gammon's allegations as true, the Court finds that he has failed to come forward with evidence of harassing conduct so severe that it altered the conditions of his employment.  *See Singletary v. Missouri Dept. of Corrections,* 423 F.3d 886, 893 (8th Cir. 2005) ("We have held that racial slurs alone do not render a work environment hostile as a matter of law.).

**<u>Retaliation</u>**

To the extent that Gammon seeks relief for retaliation, the record does not support his claim.  To establish a prima facie case of unlawful retaliation Gammon must show that (1) he engaged in protected activity; (2) Defendants took adverse employment action against him; and

(3) the adverse employment action was causally linked to his protected conduct. *Cross v. Cleaver*, 142 F.3d 1059, 1071 (8th Cir. 1998). Here, Gammon alleges that he filed discrimination charges against the AHP on February 10, 2002 and February 17, 2004. Docket entry #9, ¶¶ 23-24; Ex. C. However, he presents no evidence of a causal connection between his protected activity and any adverse employment action taken against him.

### IV.

For the reasons stated, Defendants' motion for summary judgment (docket entry #41) is GRANTED. Pursuant to the judgment entered together with this order, this case is DISMISSED WITH PREJUDICE. All pending motions are DENIED AS MOOT.

IT IS SO ORDERED THIS 9th DAY OF MARCH, 2006.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE